36   273
f91  670
91   815

## AARON SHELBY *v.* JAMES L. ALCORN.

1. OFFICE: OFFICER: MEANING OF.—The term "office" has no legal meaning attached to it different from its ordinary acceptation. An office is a continuing charge or employment, the duties of which are defined by rules prescribed by law and not by contract, and the person who fills it is an officer.

2. SAME: WHAT IS A CIVIL OFFICE UNDER THIS STATE.—By the 26th section of the 3d Article of the Constitution of this State, it is declared that "no senator or representative shall, during the term for which he shall have been elected, nor for one year thereafter, be appointed to any civil office under this State, which shall have been created, or the emoluments of which shall have been increased, during such term; except such offices as may be filled by elections by the people." This provision extends to every continuing charge or employment of a civil nature, the duties of which are prescribed by law and not by contract, and for the performance of which the incumbent is entitled to receive a stated salary or fees.

3. SAME: LEVEE COMMISSIONER: A CIVIL OFFICER.—The law creating and regulating the duties of the office of levee commissioner of Coahoma county (Acts of 1850, p. 218; Acts of 1854, p. 186–576) provides, that the incumbent shall receive his appointment from the board of police of Coahoma county, and hold his office for two years; that he shall give an official bond, and shall act as treasurer, and as such, shall receive and disburse public money; that he shall take an oath, "that he will, in all things touching his office, seek to promote the best interest of his county and of the State of Mississippi;" that he shall make a report of the cost of building and repairing the levees on the Mississippi River, and thereupon the board of police is required to levy a tax sufficient to meet it; that he shall receive a salary of fifteen hundred dollars, payable out of the levee fund. The levee commissioner is also charged with the performance of other duties to the public, and is subject to removal from office for malfeasance or misfeasance, by the board of police. *Held,* the post

VOL. VII.—18

of levee commissioner is a civil office of profit, within the meaning.   See 26th Sec. Art. 3, of the Constitution.

4. SAME : APPOINTMENT OF OFFICER: IN VIOLATION OF THE CONSTITUTION VOID.— It is of the nature and essence of the fundamental law of a State, that it avoids every act done in violation of its provisions ; and hence, the appointment of a member of the legislature to an office, in violation of Sec. 26, Art. 3, of the Constitution, is absolutely void, both for want of capacity in the appointee to accept, and for want of power in the functionary in whom the appointment is vested to make it.

5. SAME: ACTS OF OFFICER APPOINTED IN VIOLATION OF THE CONSTITUTION VOID.— The rule of the common law, which holds as valid, in respect to the public and third persons, the acts of public officers, who are such *de facto* acting under color of office by an election or appointment not strictly legal, does not apply where a statute or the constitution declares the election or appointment to be absolutely void ; and hence, the acts of an incumbent of an office, who was constitutionally ineligible to fill, are null and void.

6. SAME : VOID APPOINTMENT TO OFFICE MAY BE MARKED COLLATERALLY.—An appointment to office, made absolutely void by the constitution or legislative enactment, may be so declared wherever it comes, even incidentally, in question.

ERROR to the Circuit Court of Washington county.   Hon. J. S. Yerger, judge.

The proceedings in the court below, necessary to be stated, are fully set out in the opinion of the court.

The arguments of counsel on points not decided by the court are not reported.

*A. M. Clayton,* for plaintiff in error.

There are several demurrers in the case, which bring the complaint and all the pleadings under review, and which question the right of the defendant in error to sue at all, as well as his right to maintain this form of action.

A prominent objection to his right to sue, grows out of the act of his appointment or election.   He was a member of the legislature, which created this office of levee commissioner.   By the statute, a salary of $1500 per annum is attached to the office ; the place is styled an office, the commissioner is styled an officer, and he is elected by the board of police of his county.   We think his appointment thus falls under the constitutional prohibition, " that

no senator or representative shall, during the term for which he shall have been elected, nor for one year thereafter, be appointed to any civil office of profit under this State, which shall have been created during the term, except such offices as may be filled by elections of the people." Art. 3, § 26. He was elected to the office by the board of police, during the term for which he had been elected to the senate. A similar prohibition is to be found in the Constitution of the United States, and of many of our sister States. It is founded upon a wise jealousy of power, and is intended to prevent the creation of offices for the benefit of those who create them.

The only question upon this part of the case is, whether the plaintiff holds a civil office of profit under the State. The law itself directs that he shall hold his office under such restrictions as are therein prescribed, for the term of two years. It vests him with power to sue in his own name, as levee commissioner, and his successor in office. Similar terms are used in various passages of the system of levee laws. He is required to give bond in the penalty of $100,000, and to discharge the duties of treasurer, in which position large sums of money come into his hands. The board of police, upon the report of the levee commissioner as to the cost of work to be done, is required to levy a sufficient tax to meet it. This power of taxation is one of the highest acts of sovreignty, and none but officers can be employed in it. He is required to take an oath " that he will, in all things touching his office, seek to promote the best interests of his county, and of the State of Mississippi." Acts of 1854, p. 576. This, then, is a civil office of profit under the State, by the very terms of the act which creates it. Acts of 1854, p. 186. The whole levee system, as applicable to the county of Coahoma, will be found in the two acts just cited, and in the Act of 1850, page 218, in regard to Bolivar county, and in the acts of the called session of 1850, page 38, which simply extends the act for Bolivar county to Coahoma. The whole body of laws on the subject, contemplates the performance of duties for the public, for a stated compensation, and the nature of which are prescribed by law. All these stamp the place with the unmistakable character of an office.

If we look to the common law definition of the term office, there

Shelby v. Alcorn.

seems to be as little room for doubt. "An office is a public charge or employment, and he who performs the duties of the office, is an officer." *U. S.* v. *Maurice*, 2 Brock. 102; 7 Bacon Ab. 279; 2 Blackstone, 36.

Chief Justice Marshall, in the case from 2 Brock. says: "If a duty be a continuing one, which is defined by rules prescribed by the government, and not by contract, it seems very difficult to distinguish such a charge or employment from an office, or the person who performs it from an officer:" and he there held an agent of fortifications to be an officer.

Again it is laid down, "that a public officer is one who has some duty to perform concerning the public, and he is not the less a public officer, when his authority is confined to narrow limits, because it is the duty, and the nature of that duty, which makes him a public officer, and not the extent of his authority. Carthew's R. 479, cited 17 Ser. & Rawle, 233. Those who perform duties under contracts are not regarded as officers, but those who act under law, prescribing and regulating their duties concerning even a portion of the public, seem to be considered officers. 7 Bacon, 279, 280.

But it is said, on the other side, that none are "civil officers under the State," but those who have some connection with the legislative, judicial, or executive department of the State, or whose duties at least, pertain to the State in its sovereign capacity. This construction would make the prohibition entirely nugatory and inoperative. All offices are excepted from its operation, which are filled by elections by the people. In this State, there is not an office either legislative, judicial, or executive, or the duties of which pertain to the State in its sovereign capacity, that is not filled by popular elections. To adopt their construction, would leave nothing for the prohibition to operate on, and it would be a dead letter.

There is certainly as much reason for directing the prohibition against offices of this kind, as any other. The law is directed against the creating of jobs and offices, to be bestowed on members who pass the law; and to make it efficient, every such law should be pronounced unconstitutional. If exceptions are once permitted, the end cannot be foreseen.

The duties of this office pertained to the public of one county directly, and indirectly to all the counties in which the levee law

applied. The commissioner was to hold his office for two years; he was to give bond—to receive a salary—to receive all moneys due to the levee fund, either from sheriffs or from the auditor—and to be liable to removal from office for malfeasance, or misfeasance, by the board of police. Acts of 1854, page 186, et seq. The State lands were also subjected to this tax, and the commissioners were required to report annually to the governor. Acts of 1850, page 208. By a subsequent act, passed before the election of the plaintiff, every levee commissioner was required to take an oath of office; and upon conviction of breach thereof, was to be held guilty of perjury, and sentenced to the penitentiary. Ib. page 574. All these show, beyond doubt, that this was an office, and the incumbent an officer. Who ever heard of a proceeding to remove any one from a place for malfeasance, or misfeasance, if the place were not an office. Were it not an office, with a fixed tenure, the appointing power could remove at pleasure.

This court, in determining a similar question, recently said: "This person is not required to take an oath, or to perform any other services than such as may be confided to him by the war department, of which he is merely, for this special business, an agent." *Lindsay* v. *The Attorney-General,* 4 George's Miss. R. 529. If the duties had been prescribed by law, and the party required to take an oath to perform them, the language of the court strongly implies, that he would have been held to be an officer.

The fund which went under the control of the commissioner was made up of taxes upon the lands of individuals, and of the State, and large contributions by the State of swamp lands. The proper appropriation of this fund was a matter of general public interest, and of direct interest to the State, in the protection and improvement of the large body of lands it holds in the delta; and the commissioners were, therefore, required to make annual reports to the governor:

On the view of the whole subject, we submit that the plaintiff below was an officer; that, as such, he falls within the constitutional provision; that his appointment was, therefore, utterly void; and that he has no right to maintain this suit.

But it is argued on the other side, that even if the appointment of Alcorn be void, we cannot call it in question, in this collateral

proceeding.   Whatever the rule may be in other States, we take it that the practice and principles of our court have settled, that when a law, a grant, a deed, or any other act, is absolutely void, it may be so declared whenever it comes in question, even incidentally; but where it is voidable only, there it must be directly impeached.   2 Howard, S. C. Rep. 317, 344; 10 S. & M. 462.   In *Thomas* v. *The State,* 5 Howard, 20, the constitutional power of the judge of the Criminal Court of Adams county was contested, and was examined and upheld by this court.   In *Smith* v. *Halfacre,* 6 Howard, 582, the right to a seat upon the Circuit Court bench was decided upon a plea, in an ordinary suit, setting out the rights of the adverse claimants.   In *Royster* v. *Houston,* 7 Howard, 543, the constitutionality of the act creating the Vice-Chancery Court was considered and upheld.   In *Sam* v. *The State,* the constitutionality of the *pro tem.* appointment of Judge Moore was considered, and passed upon.   In *McNutt* v. *Lancaster,* 9 S. & M. 570, the court went into the inquiry, whether Lancaster was sheriff, or not.   They disagreed as to the conclusion; but no one questioned the propriety of the investigation and inquiry.   In *Thornton* v. *Boyd,* 3 Cushm. 598, in order to determine the validity of a deed, the court, in a collateral proceeding, inquired whether a sheriff was in office on a given day.   Certainly, after such frequent exercise of the power by this tribunal, he is a bold man who would now question it.

The case of *Rhodes* v. *McDonald,* 2 Cushm. 418, is cited to prove the reverse.   We contend that it is in entire harmony with the cases above cited.   In that case, there was a plea, questioning the right of the plaintiff to the office, and denying his right to sue.   The court considered these pleas; but held, that the appointment of the plaintiff was not void.   Surely, no stronger authority is wanting for us, on this point.

The cases of *Carmichael* v. *Trustees of School Lands,* 3 How. 84, and *Walker* v. *Commissioners of Sinking-Fund,* 6 How. 143, show that the plaintiff must aver themselves to be the incumbents of the office, and if it be denied, must prove it.   If the appointment of the plaintiff comes in conflict with the provision of the constitution, the appointment is absolutely void—a mere nullity—which may be everywhere disregarded.   There is no color of office about it, nor

any doctrine involving that consideration.    An election against the prohibition is no election.

*W. Yerger*, on same side.

Alcorn as levee commissioner of Coahoma county, sued Shelby for money, paid him on his contract to build a levee in Coahoma county, which contract it is alleged, Shelby failed to perform.

Shelby defended the action upon various grounds.

1. Shelby pleaded in abatement, that Alcorn was a member of the legislature, in the year 1854, by which legislature, the office of levee commissioner of Coahoma county was created, and that he was appointed levee commissioner under that act, while he continued to be a member of the legislature, and that by virtue of that appointment, he acted as levee commissioner.    This plea was demurred to, and the demurrer sustained.

This was clearly erroneous.    It is difficult to see, upon what grounds, the demurrer was sustained.

The Constitution, art. 3, § 26, declares that "no senator or representative shall, during the term for which he shall have been elected, nor for one year thereafter, be appointed to any civil office of profit under this State, which shall have been created, or the emoluments of which, shall have been increased, during such term, except such offices as may be filled by elections by the people." The terms used in our State Constitution, are identical almost with those used in the Constitution of the United States, in reference to offices created by Congress.    In our constitution, the exclusion extends not only to an appointment during the term, in which the office is created, but "to one year thereafter."    The objects and purposes of this constitutional provision are obvious.    They were to secure the members of the legislature against venality, and to take away as far as possible, any improper bias in the vote of the representative, and to secure his disinterestedness in the creation of offices. 1 Tuckers, Blacks. Comm. App. 214, 319, *et seq.*; Rawle on Con. Ch. 19, p. 184.

The term "civil office of profit under the State," was intended to confine the class of offices, from which a party was to be excluded, to "offices of profit," as distinguished from offices of "honor" only, and to "civil" offices as distinguished from "military" offices, or

offices in the militia. It was also limited to " offices under the State," that is, to offices created under, or by authority of the State, or its laws, as contra-distinguished from offices under the general government. Under this plea, the only question to be determined is, whether or not, the office of levee commissioner, is " a civil office of profit under the State."

An " office" is defined to be a right, to exercise a public or private employment, and to take the fees and emoluments thereunto belonging." 2 Black. Comm. Ch. 3, p. 36.

Every man is a public officer, who hath any duty concerning the public, and he is not the less a public officer, where his authority is confined to narrow limits, because it is the duty of his office, and the nature of that duty, and not the extent of his authority, which makes him a public officer. Carth. R. 479.

An office is a public charge or employment, and the term seems to comprehend every charge or employment, in which the public is interested. 2 Cowen, R. 13, 29, note b.

Chief Justice Marshall, defines an office to be " a public charge or employment, and he who performs the duties of the office, is an officer. If the duty be a continuing one, which is defined by rules prescribed by the government and by contract, which an individual is appointed by government to perform, and if those duties continue, though the person be changed, it is difficult to distinguish this employment from an office, or the individual from an officer." 2 Brockenborough's R. 102.

It would seem, from the foregoing definitions, and the provisions of the Act of 1854, ch.       authorizing the appointment of the " levee commissioner" of Coahoma county, that no doubt could exist in the mind of any one that the person so appointed is an officer, and the employment he fills an " office," in the meaning of the constitution, and the appointment of a member of the legislature, clearly within the mischief which the constitution intended to remedy.

But to remove any doubt on the subject, the act itself styles the employment " an office," declaring that the " levee commissioner, when appointed, shall hold his office, under such restrictions as are hereinafter provided, for the term of two years." See § 1.

The act also declares, that it shall be the duty of the " levee

commissioner of Coahoma county, and his successors in office, to sue," &c. See § 4.

By referring to the act, it will be seen, that it provides for the appointment of a levee commissioner; prescribes his duties; fixes his term of office; provides for the appointment of successors, on a certain contingency; requires him to give bond in the penalty of $100,000, for the performance of his duties; fixes his compensation at $1500 per annum, payable half-yearly; confers on him the duties of levee treasurer of the county, conferring upon him powers of the most extraordinary character, and requiring the performance of duties of the most important nature, in all of which the public are directly interested. And all these powers are exercised, rights conferred, and duties enjoined, by virtue of an appointment made under authority of an act of the legislature of the State, of which the appointee was a member.

If these things do not make an office, and constitute the appointee "an officer" under the State of Mississippi, and therefore obnoxious to the provisions of the constitution before quoted, I confess that my mind is unable to conceive a case which would be embraced by them.

It comes not only within the spirit and policy of the constitution, but within the very letter.

But it has been argued that the words, "Any civil office of profit under the State," restrict the operation of the constitutional provision to State offices or officers coextensive with the State. Such an argument is certainly fallacious. The true meaning of the words necessarily must be, offices created by or under authority of the laws of the State. To give them a more restricted signification; to confine them to offices coextensive with the State, would destroy the most useful purpose of the constitutional provision. Certainly the evils of improper, interested, and venal legislation might be predicated in relation to offices with a jurisdiction limited to the counties as certainly as to those with a more extended jurisdiction. Any other construction would render nugatory and inoperative the provisions of the constitution in reference to the class of offices most numerous within the State, and which legislative cupidity and venality would be most likely to create, or the emoluments of which they would be most tempted to increase.

But it is said, if Alcorn be not an officer *de jure*, he still is an officer *de facto*, and as such his acts are valid, and cannot be inquired into collaterally.

I confidently submit, that the doctrine contended for by counsel for the defendant in error, touching the powers and rights of officers *de facto*, is totally inapplicable to this case.

Chancellor Kent has stated this rule to be, " where public officers, who are such *de facto*, acting under color of office, by an election or appointment not strictly legal, or without having qualified themselves by the requisite tests, or by holding over after the period proscribed for a new appointment, as in the case of sheriffs, constables, &c., their acts are held valid, as respects the rights of third persons who have an interest in them, and as concerns the public, in order to prevent a failure of justice." 2 Kent's Comm. 8th ed. 345.

Such, too, is the opinion of this court, in *Rhodes* v. *McDonald*, 2 Cushman's R. 420.

While the general principle, as laid down by Chancellor Kent, and by the chief justice in the case of *Rhodes* v. *McDonald*, is fully admitted, I conceive this case to be exempt from the operation of the rule. In the opinion of the court, in *Rhodes* v. *McDonald*, the chief justice — speaking of the laws, directing the acts to be done by the trustees of school lands, before entering upon the duties of their office—says : ". This language is merely directory. It does not declare their acts void, if they do not give bond, and take the oath ; much less does it vacate their office, unless these acts are performed. It would be absurd to say that, under such circumstances, they remain officers, and yet their acts as such are void."

But very different is the present case. The language of the constitution is not directory—it is prohibitory. " No person shall be appointed." It is not merely a statutory, but a constitutional prohibition ; and being such, the appointment is an absolute nullity. It is void, and can confer no power on the appointee.

This court has repeatedly held, and so has every court in the Union decided, and it has become a settled principle in the legal polity of the country, that it is the right and duty of the judiciary to declare every act of the legislature, made in violation of the

constitution, or of any provision of it, null and void. Surely, if the courts will declare acts of the legislature nullities and void, because they violate the constitution, they are equally bound to declare the acts of any other department, or functionary, of the government, done in violation of the constitution, and against its prohibitions, also null and void. Whenever the constitution speaks, and prohibits the performance of any act, by any department of the government, the act, when done, must of necessity be null and void. No right can arise under it, nor power be exercised, for the simple reason, that whatever the constitution has prohibited cannot be lawfully or rightly done.

Chancellor Kent says: "That courts of justice have a right, and are in duty bound to bring every law to the test of the constitution; and to regard the constitution, first of the United States, and then of their own State, as the paramount or supreme law, to which every inferior or derivative power and regulation must conform. The constitution is the act of the people, speaking in their original character, and defining the permanent conditions of the social alliance; and there can be no doubt on the point with us, that every act of the legislative power, contrary to the true intent and meaning of the constitution, is absolutely null and void." 1 Kent's Comm. 8th ed. 495.

Is not the same rule necessarily applicable to the acts of every other power or functionary in the government? and if so, the appointment of Alcorn, being prohibited by the constitution, is null and void, and must be so declared.

As to the power to inquire into these questions collaterally, see 2 How. S. C. R. 317, 344; 10 S. & M. 462; *Thomas* v. *The State*, 5 How. Miss. R. 20; *Smith* v. *Halfacre*, 6 How. Miss. 582; *Royster* v. *Houston*, 7 How. 543; *Sam* v. *The State*, Opinion Book; *McNutt* v. *Lancaster*, 9 S. & M. 570.

A deed, grant, or other instrument or act, absolutely void, may be so declared whenever and wherever it comes in question, even incidentally. 2 How. S. C. R. 317, 344; 10 S. & M. 462.

I refer the court, on this point, to the masterly opinion of Ch. J. Sharkey, in *Glidewell* v. *Hite*, 5 Howard, 110.

*J. W. C. Watson* and *Fulton Anderson*, for defendant in error.

The first point presented by the plaintiff in error, is the eligibility of the defendant in error to the office of levee commissioner of Coahoma county, he having been a senator of the State at the time the supposed office was created, and having been elected thereto before the expiration of his senatorial term.

We say in answer, that the office of levee commissioner is not a " civil office of profit under the State," within the true intent and meaning of the constitution.   Art. 3, sec. 26, of Constitution, Hutch. C. 43.

It was clearly the object of the framers of the constitution to protect the State itself from injury, by the corruption or intrigues of the legislators.   The words " civil office under the State," therefore, import an office in which is reposed some portion of the sovereign power of the State, or having some connection with the legislative, executive, or judicial department of the State, or whose duties at least pertain to the State in its sovereign capacity, and are due to the State, and for the failure to perform which duties the State itself, in its capacity as a State, would be injured, and the incumbent be responsible to the State.   The authorities on this point are so clear, and reason out the proposition so well, that we need only refer to them.   3 Maine Rep. 481, 482; 13 Sergeant & Rawle, 219, 244; Sergeant on the Constitution, 304, 305; 13 Smedes & Marshall's Rep., 531, 532; 3 Ib. 550; 3 Sergeant & Rawle, 157; 1 Ib. 1; Elliott's Debates on the Constitution, 158–61, 481–84; *State* v. *Wilmington City Council*, 3 Harrington, 299, 301; *Respub* v. *Dallas*, 3 Yeates, 314.

In answer to this proposition, counsel cite the *United States* v. *Morris*, 3 Brockenbrough's Rep. 102, 103.

That case simply declares that an agent of fortifications, whose office is established by acts of Congress, who is appointed by the president, whose duties are to the government, and who receives pay from the government, is an officer ; a proposition to establish which, it was certainly not necessary to adduce the authority of Chief Justice Marshall.   The other authorities cited by counsel are but the common definition of the word office, which we think have no bearing on the question.   But counsel refer to the Act of March 2, 1854 (pp. 575, 576 of laws of 1854), for the purpose of showing that the duties of the levee commissioners pertain to the State.   We

submit that on an examination of the provisions of that act, it will be found not to change the character of the office in question in this particular. He still remains an officer of the county or board of police, whose duties pertain to the county, and are under the supervision of the board of police, and who holds in his hands clearly the interests of the county. This act, moreover, is not the law which creates the office, but merely an act imposing some additional duties on the officer. The land scrip mentioned in the sixth section of that act, is a county fund, and does not belong to the State.

2. We say that the defendant in error held his office *colore officii*, and that his acts are for that reason not only binding on their persons, but that he has in such case the right and power to sue. He was regularly elected by the proper authority, and gave the bond, and took the oath required, and has since been in the regular discharge of the duties of the office, without question from any quarter whatever. *Smith* v. *The State*, 19 Conn. Rep. 494; *Wickwire* v. *The State*, Ib. 489; 5 Georgia Rep. 239; *Wilcox* v. *Smith*, 5 Wendell, 231, 234; *McInstre* v. *Tanner*, 9 John's Rep. 135; 2 Ala. Rep. 31, 390; 21 Ala. Rep. 48; 7 John's, 549; *Rhodes* v. *McDonald*, 2 Cushman, Miss. Rep. 419; 9 S. & M. 590; *McKim* v. *Somers*, 1 Penn. 297; *Gilliam* v. *Reddick*, 4 Iredell, 368; *Burk* v. *Elliot*, Ib. 355; *Taylor* v. *Skrine*, 3 Brevard, 516; *Plymuth* v. *Painter*, 17 Conn. 585; 6 Hump. 458; 17 Conn. 589; 7 Serg. & R. 386, 388; 2 Rawle, 137.

But it is said in reply, no one can be an officer, *de facto*, except by virtue of a constitutional law. But the constitutionality of the law is not questioned in this case. If it be said that by the constitution the election of defendant in error is void; we say this cannot be ascertained without an inquiry in the proper form, and that the cases cited above, especially those in 9 John. 135; 9 S. & M. 590, and 3 Brevard, 516, are express on this point.

It is also said that where an officer *de facto* sets up a claim himself, or asserts a right, the rule does not apply. In reply, we say, the cases cited in 19 Conn., 2 Cushman, and 3 Brevard, expressly decide this point, and seem to place it beyond doubt that in such case the rule does apply.

It is contended, lastly, on this point, that on the authority of the cases of *Boyd* v. *Thornton*, 3 Cushm. 598; *Smith* v. *Halfacre*, 6 How. 598; *Royster* v. *Houston*, 7 How. 543, and the recent case

of *Sam* v. *The State*, involving the constitutionality of the appointment of Judge Moore, the question can be inquired into in a collateral manner. But in these cases, the question of holding office, *colore officii*, was not made, nor did it arise. In the first of the above cases, there was a contest as to when the office of sheriff expired, and the court held that a sheriff did not go out of office until the last day of the general election at which his successor was appointed. The necessary inference is, that until that day his successor could not have even color of office, for the election only appointed him to the office on that day. In the next case, the question was as to whether the commission, under which the judge claimed the office, had expired, and as it was held that it had so expired, of course he no longer had color of office. In the last two cases, the question was as to the right of the appointing power to exercise the act of appointment, and in each case it was sustained; but if it had not been sustained, then there could have been no color of office, for it is appointment by a competent power that constitutes color of office.

SMITH, C. J., delivered the opinion of the court.

Aaron Shelby, on the second day of December, 1852, entered into a contract with the board of levee commissioners of Coahoma county, by which he obligated himself, for a stipulated price, to construct a certain line of levee in said county, according to the survey, plan, and specifications, as to height and base, &c., of the engineer of the commissioners. By the terms of the agreement, the levee was to be completed by the first of February, 1854. The commissioners paid or advanced to Shelby upon his contract, eight thousand dollars in money, and sixteen thousand acres of land scrip, estimated at fifty cents per acre. On the 4th of July, 1853, the same parties entered into another agreement, by which Shelby was bound to construct, upon the terms and conditions specified in the previous contract, an additional line of levee in said county. This levee was to be completed by the first of February, 1855; and the time for completing the first levee, was extended to the same time.

By an act of the legislature, approved March 2d, 1854, it was provided that the president of the board of police of Coahoma county,

should convene said board on the first Monday of May thereafter, for the purpose of appointing (in lieu of the board of levee commissioners theretofore provided for by law) a single levee commissioner, who, when appointed, should hold his office under such restrictions as were thereinafter prescribed, for the term of two years. Acts of 1854, p. 186.

The board of police met pursuant to the directions of the statute, and when so assembled, appointed James L. Alcorn, levee commissioner. Alcorn immediately qualified, and entered upon a discharge of the duties of the office, and, on the 28th of March, 1855, brought this suit in the Circuit Court of Coahoma, to recover back from Shelby the sum of sixteen thousand dollars. The ground of recovery was the alleged total failure of Shelby to construct the said levees, agreeably to the terms of his contracts.

The defendant pleaded in abatement, averring that the plaintiff was a member of the legislature by which the law was enacted, creating the office of levee commissioner, and that during the term for which he was elected a member of the legislature as aforesaid, the board of police of Coahoma county appointed him levee commissioner, a civil office of profit under the State, and that the appointment was void. To this plea a demurrer was filed, which was sustained by the court. Whereupon a demurrer to the complaint was filed by the defendant, which was overruled; and judgment of respondeat ouster was entered.

The defendant then filed his answer to the complaint, setting forth various matters in defence to the action. During the subsequent progress of the litigation, other answers or pleas, alleging additional grounds of defence, were filed by the defendant. But neither these, the pleadings of the opposite party, nor the action of the court in reference thereto, is it material, more particularly, to notice, before we come to consider the questions which are thereby presented.

The cause having been submitted to a jury upon the issues joined between the parties, a verdict was rendered in favor of the plaintiff, for the sum of $19,293 64, and judgment was accordingly entered. A motion for a new trial was made, which was overruled, and the defendant excepted, and sued out this writ of error.

The numerous questions presented by the exceptions to the judg-

ment, have been, by the respective counsel, argued with distinguished learning and ability. Of these questions, the first which demands our.consideration, is the question arising upon the plea in abatement; that is, whether the defendant in error had title to maintain the action.

The statute creating the office of levee commissioner, was approved on the 2d of March, 1854. On the first Monday in May of that year, the defendant in error was appointed to that office, by the board of police of Coahoma county. He was a member of the legislature of this State, when the said statute was enacted. A salary of fifteen hundred dollars per annum is attached by law to the office of levee commissioner. And it is hence insisted, that his appointment falls under the constitutional provision, " that no senator or representative shall, during the term for which he shall have been elected, nor for one year thereafter, be appointed to any civil office of profit under this State, which shall have been created during the term, except such offices as may be filled by elections of the people."

It is not to be disputed that, if the place or post of levee commissioner be an office, in the true legal meaning of the term, it is also a civil office of profit. But it is contended that the place, post, or office of levee commissioner is not a civil office of profit under the State, within the true intent and meaning of the constitution.

This position presents two questions for consideration : 1. Whether the place or post of levee commissioner, according to the legal acceptation of the term, is an office ; 2. If so, whether it is an office under the State to which the constitutional prohibition was intended to be applied.

1. The term office has no legal or technical meaning attached to it, distinct from its ordinary acceptations. An office is a public charge or employment ; but, as every employment is not an office, it is sometimes difficult to distinguish between employments which are, and those which are not offices. It is generally, if not universally true that a duty or employment arising out of a contract, and dependent for its duration and extent upon the terms of such contract is never considered an office. An officer, as defined by Blackstone, is a right to exercise a public or private employment, and to take the fees and emoluments thereunto belonging, whether public,

as those of magistrates, or private, as bailiffs, receivers, and the like. 2 Blacks. Com. 36. And it is laid down " that a public officer is one who has some duty to perform concerning the public; and he is not the less a public officer when his duty is confined to narrow limits, because it is the duty, and the nature of that duty, which makes him a public officer, and not the extent of his authority." 7 Bac. Ab. 280; Carthew, 479. And we apprehend that it may be stated as universally true, that where an employment or duty is a continuing one, which is defined by rules prescribed by law and not by contract, such a charge or employment is an office, and the person who performs it is an officer.

This was the rule applied by Chief Justice Marshall, in the case of the *United States* v. *Maurin*, in which it was held that an agent of fortifications was an officer. 2 Brock. Rep. 102.

Applying this principle to the question before us, there can be no doubt that the place or post of levee commissioner is an office, and the person appointed to fill it an officer.

The law itself provides that the levee commissioner shall hold his office for the term of two years, under such restrictions as are therein prescribed. He is required to give bond, and to discharge the duties of treasurer, in which position he is entitled to receive large sums of public money. The board of police, upon the report of the levee commissioner as to the cost of the work to be done, is required to levy a sufficient tax to meet it; and he is required to take an oath " that he will, in all things touching his office, seek to promote the best interests of his county and the State of Mississippi." These directions, of themselves, without doubt, define the character of the place of levee commissioner, and determine it to be an office. But, in fact, the several acts on the subject contemplate the performance of duties to the public, which are prescribed by law, for a stated compensation. See Acts, 1850, p. 218; Acts, 1854, pp. 186, 576; and the Act of the November session, 1850, extending the provisions of the first-recited act to Coahoma county.

2. Having ascertained that the levee commissioner is an officer, and his place an office, according to the true legal meaning of the term, we will proceed to inquire whether it falls under the prohibition contained in the 26th Sect. 3d art., of the Constitution.

The powers vested in the government of the State of Mississippi

are either legislative, judicial, or executive ; and these respective branches of power have been committed to separate bodies of magistracy.   It follows, hence, that whether an office has been created by the constitution itself, or by statute enacted pursuant to its provisions, the incumbent, as a component member of one of the bodies of the magistracy, is vested with a portion of the power of the government, whether the portion of the power of the government which he is thus entitled to exercise is legislative, judicial, or executive in its character.

It is, therefore, undeniably true, as maintained by the counsel for the defendant in error, that the words " civil office under the State," contained in the article of the constitution above referred to, import an office in which is reposed some portion of the sovereign power of the State, and, of necessity, having some connection with the legislative, judicial, or executive departments of the government.   It is a conclusion which is the necessary and logical result of the theory of the government itself.   But, it is very evident that this conclusion can, in no wise, strengthen the position that the office of levee commissioner does not fall under the prohibition in the constitution, unless it can be farther shown that it is not an office, under the laws or government of the State of Mississippi.

Upon this point, the opinion of the judges of the Supreme Court of the State of Maine, on a question submitted to them by the governor, is principally relied on.

The question was, whether the office of agent, under a resolve of the Legislature of Maine, authorizing the governor to appoint one or more agents for the preservation of timber on the public lands, was a civil office of profit, within the meaning of the constitution of that State, so that no member of the legislature, by whom the resolve was passed, could be constitutionally appointed as such agent? 3 Maine Rep. 481.

The opinion held, that the office of timber-agent, created by the said legislative resolve, was not an office within the meaning of the constitution, and " nothing more than a service, or employment, under executive authority; not essentially different from the office, or employment, of State printer, or a contract to build a State house, or a State prison ; and hence, the response was in the negative."

The competency of a member of the Legislature of Maine to re-

ceive and hold the appointment of timber-agent, depended exclusively on the question, whether the agency was, or was not, an office, within the meaning of the constitution of that State? And it was determined to be a mere employment under the discretionary directions of the governor, and not an officer. Assuming, as we have held, that the place of levee commissioner is, in the proper sense of the term, an office, it is evident that the decision has no relevancy whatever to the question, whether it does not fall under the constitutional provision. But, on the other hand, in view of the fact, that the authority and power attached to the office of levee commissioner are extensive and important, and such as no one could claim to exercise, except in virtue of a legislative enactment; that the public of one county is, directly, and the whole State, indirectly, interested in the due administration of the office; that the powers and duties of the levee commissioner are defined and prescribed by law; that he is required to take an oath for the faithful discharge of his duties; and that he is subject to removal from office for malfeasance, or misfeasance, by the board of police, the argument employed by the learned judges, to show that the agency was not an office, proves, conclusively, that the place of levee commissioner, in the constitutional meaning of the term, is an office under the State. They say, that "there is a manifest distinction between an office and an employment under the government. We apprehend that the term 'office' implies a delegation of a portion of the sovereign power, and the possession of it by the person filling the office; and the exercise of such power within legal limits, constitutes the correct discharge of the duties of such office. The power thus delegated and possessed, may be a portion belonging sometimes to one of the three great departments, and sometimes to another; still, it is a legal power, which may be rightfully exercised, and in its effects will bind the rights of others, and be subject to revision and correction only according to the standing laws of the State. An employment, merely, has none of these distinguishing features. A public agent acts only on behalf of his principal, the public, whose sanction is generally considered necessary to give the act performed the authority and power of a public act or law. And if the act be such as not to require such subsequent sanction, still it is only a species of service performed under public authority,

but not in execution of any standing laws. . . . It appears, then, that every office, in the constitutional meaning of the term, implies an authority to exercise some portion of the sovereign power, either in making, administering, or executing the laws."

It is manifest, that the local and limited power and duties of the levee commissioner, can have no effect in determining the question, whether his office is not an office under the State. A member of the board of county police, or a justice of the peace, is as much an officer under the State as the executive, the heads of department, or a member of the judiciary. The powers attached to the office of levee commissioner evidently pertain to the executive branch of the government. Clothed with a portion of the power vested in that department, the commissioner, in the discharge of his proper functions, exercises as clearly sovereign power as the governor, or a sheriff, or any other executive officer, when acting within his appropriate sphere.

The object of the constitutional prohibition is too manifest to require comment. The office of levee commissioner is so clearly within the mischief which it was intended to guard against, that it does not admit of dispute. It was precisely to such offices that the prohibition was intended to be applied. For, if it does not embrace offices which it was competent for the legislature to create, and which might be filled by appointment, and not by popular election, a most salutary provision of the constitution would be utterly nugatory; as every office provided for in the constitution, except that of clerk of the High Court of Errors and Appeals, is made elective by the people; and all offices filled by popular elections are excepted from its operation. There would not, upon any other construction, be a single class of offices, or appointments, to which it could apply.

Upon the admitted facts, the prohibition applied as well to the board of police, who held the appointing power, as to the defendant in error. It did not simply render him ineligible to the office of levee commissioner. It operated, also, upon the board, and incapacitated it from making the appointment. It is of the very nature and essence of the fundamental law of a State, that it avoids every act, performed in violation of its provisions. The act of appointment was, therefore, void. It was void, for want of capa-

city in the appointee to accept, and for want of power in the board of police.

As the appointment was not, merely voidable, but absolutely void, it would seem, necessarily, to follow, that the appointee could not claim to exercise any right attached to the office.

But the defendant in error was the actual incumbent of the office, holding in virtue of an appointment, made by the board of police, in whom the authority to appoint was legally vested. It is. hence insisted, that he held the office *colore officii*, and that in such case, his acts are not only binding upon third persons, but that his title to sue, cannot, in this proceeding, be questioned.

It was anciently laid down, that "where a person claims to hold an office, his title to the office shall not come in question, in an action to which he is not a party; but while he holds the office *de facto*, his acts and doings therein will be deemed good." Bacon, 283.

"In the case of public officers, says Chancellor Kent, who are such *de facto* acting under color of office by an election or appointment not strictly legal, or without having qualified themselves by the requisite tests, or by holding over after the period prescribed for a new appointment, as in the case of sheriffs, constables, &c., their acts in respect to the public and third persons, who have an interest in them, are held valid, in order to prevent a failure of justice." 2 Kent, 339.

This is the settled rule at common law, and it is the doctrine recognized by the courts of this confederacy. *Fowler* v. *Barber*, 9 Mass. 231; 15 Ib. 180; *The People* v. *Collins*, 7 John. 549; *Keyser* v. *McKissam*, 2 Rawle, 13; *Riddle* v. *Bedford County*, 7 S. & R. 392; *Taylor* v. *Skrine*, 3 Brevard, 516; *Beard* v. *Cameron*, 3 Murphy, 181; *Lyons* v. *State Bank*, 1 Stew. 442; *Bush* v. *Elliott*, 3 Brevard, 516; *Wickwire* v. *The State*, 19 Conn. R. 477.

In some of the courts this principle is applied to the acts of officers *de facto*, where the appointment was not simply irregular and voidable, but where it was not only illegal, but absolutely void. 3 Brevard, 516; 19 Conn. R. 477. In this court, so broad an operation has never been given to the rule. It is intended, only, to cases in which the common law, on the subject, has not been repealed. Where the constitution or a statute has interposed and

declared, that the official acts of persons, who have not been duly appointed to office, or who have not qualified, by the requisite tests, shall be absolutely void of necessity, a different rule must be applied. In such cases, no court could be justified, upon an assumed principle of public expediency, in disregarding the imperative declarations of the law.

In *McNutt* v. *Lancaster, et al.* it was expressly held, by the late chief justice, that the official bond of a person, who had been duly elected to the office of tax-collector, but who had not qualified, by taking the oath prescribed by statute, was absolutely void: and that, too, in a suit upon the bond by the governor, against the makers.

The statute out of which the question in that case grew, declared that all acts performed by the officer, before taking the prescribed oath, should be void. And the chief justice, recognizing the general rule upon which acts performed under color of office are held valid, said, " But I cannot admit, that the acts, either of officers *de facto* or *de jure*, are valid, when the law declares them void. ʻThe statute, like a tyrant, when he comes he makes all void.' It is not at all uncommon for a law to declare, that if an officer do not perform a certain thing in the prescribed mode, his acts shall be void ; and they are uniformly held to be so in such cases." 9 S. & M. 594.

In that case the court were divided; Judge Clayton holding, that when a person performs the duties of an office, it is only necessary to prove the acts of one, in order to make him responsible for their consequences : that, as to the officer, no evidence was necessary as to his election or qualifications, and that this was the doctrine in regard to actions against him, but that where he was the plaintiff, the law was different.

This case, though no authority in favor of the doctrine that, under the jurisprudence of this State, the acts of an officer *de facto* may be collaterally investigated and declared void, for want of legal authority in the person by whom they are performed, is directly in point, to show that here, according to the principles and practice of this court, the right of the defendant in error, to maintain the suit, may be called in question and decided, especially upon the allegation, that his appointment was absolutely void.

Shelby *v.* Alcorn.

But this court, in several cases previously decided, went farther, and inquired into the validity of the appointment of officers, where their acts, performed *colore officii*, were brought in question in a collateral proceeding. *Thomas* v. *The State*, 5 How. 20 ; *Smith* v. *Halfacre*, 6 Ib. 582 ; *Royster* v. *Houston*, 7 Ib. 543.

In the case of *Smith* v. *Halfacre*, the right to a seat upon the Circuit Court bench was decided upon a plea in abatement, in an ordinary suit, setting out the grounds upon which the title of the judge *de facto* was contested.

In a case recently decided, the case of *Sam* v. *The State*, the validity of an executive appointment of a circuit judge was examined, upon a plea in abatement to an indictment found by a grand jury, and passed upon.

These cases must be held as settling the principle of this court, that where a law, an appointment to office, or any other act, made absolutely void by the constitution, or by legislative enactment, whenever it comes, even incidentally, in question; may be so declared.

Having ascertained that the appointment of the defendant in error to the office of levee commissioner, being made in direct violation of a prohibitory provision of the constitution, and holding, as we do, that the validity of the appointment was a proper subject of examination, under this proceeding, the necessary result is that in our opinion, the demurrer to the plea in abatement should have been overruled in the court below.

As our determination of this question will put an end to the controversy as between these parties, it becomes unnecessary to examine any other question in the cause.

Judgment reversed, and cause remanded.

A re-argument was asked for, but refused.