\* STATE EX REL. RUPP v. MRS. R. S. RUST ET AL.

FEMALES NOT ELIGIBLE TO OFFICE.

> The act of April 10, 1889, 86 O. L., 221, creating a board of work-house directors composed of females for the female department of the work-house, is an act creating an office, and the directors therein provided for, are officers, within the contemplation of sec. 4, art. 15, of the constitution, and such office can only be held by electors, viz.: "male citizen of the age of twenty-one years who shall have been residents of the state one year," etc.; as prescribed by sec. 1, art. 5, of the constitution.

QUO WARRANTO.

The relator files his petition, claiming that Mrs. R. S. Rust, Mrs. A. H. Bode, Mrs. Milo G. Dodd, Mrs. Charles F. McLean and Mrs. Harry Rosenbaum, for the space of five weeks now last past, and more, have assumed to have, hold and exercise without any warrant or right whatever, and without possessing the qualifications of electors of the state of Ohio, the liberties, authorities, privileges, franchises and public offices, to-wit, the direction, management, control, maintenance, and care of that part of the workhouse of the city of Cincinnati, Hamilton county, Ohio, devoted to the female convicts, and of the female convicts therein, under the style and name of the board of work-house directors of the female department, claiming to have and assuming to exercise full authority, jurisdiction, control and management over that part of the work-house devoted to females, and prays that they may be ousted and excluded therefrom.

To this petition the defendants answer that the board of work-house directors of the female department of the work-house of the city of Cincinnati was established, and its duties prescribed by the act of the general assembly, passed and took effect April 10, 1889, 86 O. L., 221, and provided that in any county containing a city of the first grade of the first-class, the direction, management, control, maintenance and care of that part of the work-house devoted to the female convicts, and of the female convicts therein, shall be vested in a board of five female directors, who shall be called the board of work-house directors of the female department, and such directors shall be residents of the corporation, and serve without compensation. The female directors herein provided for, shall be appointed in the same manner as the male directors, and serve for the same term, and shall have full authority, jurisdiction, control and management over that part of the work-house devoted to the female convicts.

That about the 28th of June, 1889, these defendants were duly appointed as members of said board by the mayor of Cincinnati, with the approval of the council of said city. The defendants accepted said appointment, and have ever since endeavored faithfully to perform the duties thereof. Wherefore they pray judgment.

To this answer relator demurred. The case was very ably argued by Mr. Littlefield, assistant prosecuting attorney, for relator, and by Hon. Job E. Stevenson for defendants.

For the relators it was contended, first, that the act creating the board, violates sec. 4 of art. 15, of the constitution of the state, which provides that, "no

---

\* This case was cited by the circuit court in State v. Staley, 3 Ohio Circ. Dec., 000 (s. c. 5 C. C. R., 605). It is followed in Commissioners v. Cambridge, 4 Ohio Circ. Dec., 000 (s. c. 7 C. C. R., 82).

Vol. II. C. C.—37.

person shall be elected or appointed to any office in the state unless he possesses the qualifications of an elector; which qualifications are prescribed by sec. 1, art. 5, of the constitution, to be: "Every male citizen of the United States, of the age of twenty-one years, who shall have been a resident of the state one year next preceding the election, and of the county, township or ward in which he resides, such time as may be provided by law."

Secondly—The position attempted to be created under the act by which the defendants hold, is an office such as is contemplated by the constitution, and which can only be held by an elector, as above described.    State ex rel. v. Kennon, 7 O. S., 546, 556, 569; State v. Wilson, 29 O. S., 347.

For the defendants Mr. Job E. Stevenson argued.

First—This is not an office within the meaning of sec. 4, art. 15, of the constitution.

The word office used in the constitution, means a public office, whenever the incumbent exercises a part of the sovereignty of the state pertaining to the executive, legislative or judicial department.    High on Extraordinary Remedies, sec. 625.    The work-house of Cincinnati is a mere reformatory institution, and has so always been classed in the statutes.    Warwick v. State, 25 O. S., 21, 24.

See annual report of Cincinnati, Recommendation of Mayor, 1864; Disney Ordinances, 1868, p. 22; 63 O. L., 30.

A woman may be deputy clerk of the probate court; Warwick v. State, 25 O. S., 21, 24, or of the county court; 17 Pac. Rep., 505.

The trustees of Southern R. R., appointed by the Superior Court, are not public officers.    Walker v. Cincinnati, 21 O. S., 14.

In a long series of years numerous statutes of the state recognized the appointment of women to positions of equal importance in reformatory institutions of the state.

Female matrons, assistant matrons and teachers are appointed in all our public institutions.    The city orphan asylum, an institution incorporated by the state, is managed entirely by women, and they are by law entitled to receive and control any child or person subject to be placed in any Children's Home in the county, and may bind them out.    85 O. L., 278 and 280.

In the act creating a Girls' Industrial Home, secs. 766 and 767, Rev. Stat., the governor of the state is authorized to appoint a committee of three visitors, who shall be women, who shall be paid their expenses out of the state treasury, their term for three years, their duty to visit the home once in every three months, and make a thorough examination as to the general welfare and condition of the girls, and the working of the institution, make a written report of the result of the visit, with such recommendations as they may deem advisable, and the trustees are required to spread it in full on their minutes at the next regular meeting.    A similar committee of examination, consisting of five women, is provided for the Soldiers' and Sailors' Home, sec. 675a, Rev. Stat.; also for Children's Home of Meigs county, sec. 7828, Rev. Stat.; and by general statute, secs. 7796-8, provision is made for the appointment of county examiners, three of whom shall be women.

By the act of May 5, 1873, 70 O. L., 277, authority is granted commissioners of certain counties to establish and support homes for friendless women and girls. The government of such institutions is vested in a board of trustees consisting of seven, not less than three of whom shall be women (and all may be), to be appointed by the judge of the court of common pleas, and approved by the commissioners of the county, their term to be three years, etc.

They are required to take an oath, to appoint president, secretary and treasurer; treasurer to give bond in $10,000.

They are to manage the Institute, appoint a superintendent and other officers, and remove for cause, etc., pay salaries of officers, receive, hold and invest legacies left to the institution.    Girls convicted of offenses by court are committed to their custody, and girls under sixteen may by the court be sentenced to confinement in

said home, when found guilty of penitentiary offenses, instead of being sent to the penitentiary.

All these powers thus confided to women are greater than those conferred on these defendants, and have been exercised for years in the state.

A metropolitan board of health, appointed by the governor, was declared not to be an office; 21 N. E. Rep., 890; 51 N. H., 316.

2. But even if it be an office, the demurrer to the answer should be overruled, because the state having charged that the defendants are usurping an office created by this act, cannot now deny it.

The position created by the act is one which none but women can fill, and if the law be unconstitutional, there is no such position, and *quo warranto* will not lie. 42 Conn., 79; 73 Cal., 491, 486; 15 Mich., 164; 7 Richardson (s. c.); 3 East. Rep., 119.

### Cox, J

The question which is decisive of this case is, Does the act (86 O. L., 221) in controversy create an office, and does it attempt to create the defendants officers within the meaning of sec. 4, art. 15, of the constitution? If this be an office within the meaning of that clause, then it is clear it can only be filled by "electors"—male citizens of the age of twenty-one years, who shall have been residents of the state one year, etc.

What is an office? We have had numerous decisions in our state upon that question. In the case of.the State ex rel. v. Kennon et al., 7 O. S., 547, it was held that "a statute which provides for the creation of a board, authorizing it to appoint commissioners of the state house and the directors of the penitentiary of this state, and fill all vacancies which might occur in the offices of directors or state house commission, and authorizing such board, or a majority, to remove any directors of the penitentiary for causes specified, or which might by the board be deemed sufficient, created offices."

In the opinion of the court, page 556, it is said "Webster defines the word office to signify a particular duty, charge or trust, conferred by public authority for a public purpose;" and in 20 Johns., 492, Platt, Judge, defines it to be "an employment on behalf of the government, in any station or public trust, not merely transient, occasional, or incidental. If we accept either or both of these definitions as substantially correct, it is clear to our minds, that if these statutes are held valid, these defendants are officers."

In the same case it was held that compensation or emolument is not a necessary element in the constitution of an office.

In the case of Walker v. Cincinnati, 21 O. S., 14, the question was raised as to whether the trustees of the Southern Railway were officers within the meaning of the clause of the constitution, which provides that the general assembly, in cases not provided for in this constitution, shall fix the term of office and the compensation of all officers. And the supreme court, on page 50, says: "This clause can not be regarded as comprehending more than such offices as may be created to aid in the permanent administration of the government. It can not include all the agencies which the general assembly may authorize municipal corporations to employ for local and temporary purposes. These trustees have no connection with the government of the state, or of any of its subdivisions. They have nothing to do with the general protection and security of persons and property."

In Warwick v. State, 25 O. S., page 21, it was held by the supreme court that a female is eligible to the office of deputy clerk of the probate court, because the judge of the court was also clerk, and the acts of the deputy are mere ministerial, and are the acts of the principal; that the section of the constitution would apply to the probate judge, but not to the deputy.

In the case of the State ex rel. v. Wilson, 29 O. S., 347, it was held that the

place of medical superintendent of a hospital for the insane, under the act of March 27, 1876, is an office within the meaning of sec. 4, art. 15, of the constitution, which ordains that 'No person shall be elected or appointed to any office in this state unless he possess the qualifications of an elector.'

The court in that case say, "it is impossible to give a definition of an office that will be applicable to all offices." Some of the definitions of an office are "a right to exercise a public or private employment, and to take the fees and emoluments (2 Blackstone 36)," and the same in substance, 3 Kent, 454, where it is defined to be "a right to exercise a public or private trust (7 Bac. Abridg.)"

"Every man is a public officer who hath any duty concerning the public, however it may be confined to narrow limits." Carthew, 478.

"Chief Justice Marshall, in 2 Brock, 103, says if a duty be a continuous one, defined by rules, prescribed by the government, and not by contract, it is an office," and so in 36 Miss., 289.

The work-house was established by the general assembly of the state in the exercise of the sovereign power of the state to protect its citizens and their property from criminals and to preserve the public peace. It was put under the control and management of a board of directors, who should be freeholder electors of the corporation, and serve without compensation. Section 2096, Rev. Stat. They are given power to erect and maintain the house, the care of convicts sent there for crime, to confine them at hard labor under the rules and discipline until the expiration of sentence; power to appoint a superintendent and other inferior officers and employes, and power to discharge, for good cause, a person committed to the house.

It has never been doubted, we believe, that these directors are officers, and by the terms of the constitution they must be electors. No citizen of another state could fill such a position. He must be an elector of this state. State v. Wilson, 29 O. S., 347.

Now, the act creating the board of which defendants claim to be members, simply divides the work-house and its duties into male and female departments, and gives the defendants the same powers and duties over the female department and its inmates that heretofore the directors had over the entire establishment and all its inmates.

We can not but conclude from all the language of the decisions of the highest court of the state that this act attempts to invest females with the powers and duties of an office, such as that required to be held by the constitution only by electors. We have been cited by counsel to many acts of the legislature running through a long series of years, giving to females similar powers in analogous institutions, and it is claimed that the policy of the law has become so fixed that we must adhere to it. Legislative acts are always to be upheld unless clearly in violation of the constitution, but when so, courts are required to declare them void.

In this case we regret to be compelled to so decide, on account of the great value, and we might say necessity, of having women to attend to the wants and watch over the many unfortunate victims of crime incarcerated in such institutions. The very high character of the ladies who have been appointed to this charge assures us that under their guidance the condition of the inmates would be greatly ameliorated, their characters improved, if not entirely changed, and the public be a great gainer. We are of the opinion that it was a great oversight in our constitution in not making provision for women filling just such positions as that contemplated in this act.

While we have felt constrained to hold that the statute in question attempted to confer on the persons who should be appointed under its provisions such duties and functions as made their office one which, in the contemplation of the constitutional provision, can only be held by an elector, we would not be understood as holding that there are not many positions in said institution which may be held by women. On the contrary, we think there are, and that under the direction of the

officers having control they may be employed as matrons, clerks, care-takers, advisors, and in other like positions; and with our view of the great benefit which would likely result to the public, and especially to the female inmates of this institution, if the provisions of the statute could be carried out, the law might be so amended as to provide for this; or the board having the legal control, might well delegate to the defendants, or those who may succeed them, many of the duties and functions which the law attempted to confer upon them.

Schwartz, Littleford & Wright, prosecuting attorneys, for plaintiff.

Job E. Stevenson, for defendants.