Cox, J.
The question which is decisive of this case is, Does the act [Vol. 86, p. 221, Ohio L.] in controversy create an office, and does it attempt to create the defendants officers within the meaning of Section 4, Article 15, of the constitution ? If this *333 be an office within the. meaning of that clause, then it is clear it can only be filled by “ electors ” — male citizens of the age of twenty-one years, who shall have been residents of the state one year, etc.
What is an office ? We have had numerous decisions in our state upon that question. In the case of the State ex rel. Attorney General v. Wm. Kennon et al., 7 Ohio St. 547, it was held that “ a statute which provides for the creation of a board, authorizing it to appoint Commissioners of the State House and the Directors of the Penitentiary of this State, and fill all vacancies which might occur in the offices of Directors or State House Commission, and authorizing such board, or a majority, to remove any Directors of the Penitentiary for causes specified, or which might by the board be deemed sufficient, created offices.”
In the opinion of the court, page 556, it is said “Webster defines the word office to signify a particular duty, charge or trust, conferred by public authority for a public purpose;” and in 20 Johns, 492, Platt, Judge, defines it to be “an employment on behalf of the government, in any station or public trust, not merely transient, occasional, or incidental. If we accept either or both of these definitions as substantially correct, it is clear to our minds, that if these statutes are held valid, these defendants are officers.”
In the same case it was held tbat compensation or emolument is not a necessary element in the constitution of an office.
In the case of Walker v. The City of Cincinnati, 21 Ohio St. 14, the question was raised as to whether the Trustees of the Southern Railway were officers within the meaning of the clause of the constitution, which provides that the General Assembly, in cases not provided for in this constitution, shall fix the term of office and the compensation of all officers. And the Supreme Court, on page 50, says: “ This clause can not be regarded'as comprehending more than such offices as may be created to aid in the permanent administration of the government. It can not include all the agencies which the General Assembly may authorize municipal corporations to employ for local and temporary purposes. These trustees have no *334 connection with the government of the state, or of any of its subdivisions. They have nothing to do with the general protection and security of persons and property.”
In 25 Ohio St., page 21, it was held by the Supreme Court that a female is eligible to the office of deputy clerk of the probate court, because the judge of the court was also clerk, and the acts of the deputy are mere ministerial, and are the acts of the principal; that the section of the constitution would apply to the probate judge, but not to the deputy.
In the case of the State ex rel. Attorney-General v. Wilson, 29 Ohio St. 347, it was held that the place of medical superintendent of a hospital for the insane, under the act of March 27, 1876, is an office within the meaning of section 4, article 15, of the constitution, which ordains that lNo person shall be elected or appointed to any office in this state unless he possess the qualifications of an elector.’
The court in that case say, “ it is impossible to give a definition of an office that will be applicable to all offices.” Some of the definitions of an office are “a right to exercise a public or private employment, and to take the fees and emoluments (2 Blackstone, 36),” and the same in substance, 3 Kent, 454,, where it is defined to be “a right to exercise a public or private trust (7 Bac. Abridg.).”
“ Every man is a public officer who hath any duty concerning the public, however it may be confined to narrow limits.” Carthew, 478.
“ Chief Justice Marshall, in 2 Brock, 103, says if a duty be a continuous one, defined by rules, prescribed by the government, and not by contract, it is an office,” and so in 36 Miss. 289.
The work-house was established by the general assembly of the state in the exercise of the sovereign power of the state to protect its citizens and their property from criminals and to preserve the public peace. It was put under the control and management of a board of directors, who should be freeholder electors of the corporation, and serve without compensation. (Rev. Stats., sec. 2096). They are given power to erect and 'maintain the house, the care of convicts sent there for crime, to"confine them at hard labor under the rules and discipline *335 until the expiration of sentence; power to appoint a superintendent and other inferior officers and employes, and power to discharge, for good cause a person committed to the house.
It has never been doubted, we believe, that these directors are officers, and by the terms of the constitution they must be electors. No citizen of another state could fill such a position. He must be an elector of this state [29 Ohio St. 347].
Now, the act creating the board of which defendants claim to be members, simply divides the work-house and its duties into male and female departments, and gives the defendants the same powers and duties over the female department and its inmates that heretofore the directors had over the entire establishment and all its inmates.
We can not but conclude from all the language of the decisions of the highest court of the state that this act attempts to invest females with the powers and duties of an office, such as that required to be held by the constitution only by electors. We have been' cited by counsel to many acts of the legislature, running through a- long series of years, giving to females similar powers in analogous institutions, and it is claimed that the policy of the law has become so fixed that we must adhere to it. Legislative acts are always to be upheld unless clearly in violation of the constitution, but when so, courts are required to declare them void.
In this case we regret to be compelled to so decide, on account of the great value, and we might say necessity, of having women to attend to the wants and watch over the many unfortunate victims of crime incarcerated in such institutions. The very high character of the ladies who have been appointed to this charge assures us that under their guidance the condition of the inmates would be greatly ameliorated, their characters improved, if not entirely changed, and the public be a great gainer. We are of the opinion that it was a great oversight in our constitution in not making provision for women filling just such positions as that contemplated in this act.
While we have felt constrained to hold that the statute in question attempted to confer on the persons who should be appointed under its provisions such duties and functions as *336 made their office one which, in the contemplation of the constitutional provision, can only be held by an elector, we would not be understood as holding that there are not many positions in said institution which may be held by women. On the contrary, we think there are, and that under the direction of the officers having control they may be employed as matrons, clerks, care-takers, advisors, and in other like positions ; and with our view of the great benefit which would likely result to the public, and especially to the female inmates of this institution, if the provisions of the statute could be carried out, the law might be so amended as to provide for this; or the board having the legal control, might well delegate to the defendants, or those who may succeed them, many of the duties and functions which the law attempted to confer upon them.
Schwartz, Littleford & Wright, prosecuting attorneys, for plaintiff.
Job E. Stevenson, for defendants.