### IN THE

## SUPREME COURT OF JUDICATURE

### OF THE

## STATE OF NEW-YORK,

### SINCE JUNE, 1839.

---

THE PEOPLE, *ex relatione* Elam Lyndes and Francis E. Spinner, *vs.* THE COMPTROLLER OF THE STATE.

*Commissioners* for the erection of a public work, authorized by a special act of the legislature to be appointed by the governor, secretary of state, and comptroller, the duration of whose office is not prescribed by law, hold their offices *during the pleasure* of the authority making the appointment; and, of course, are subject to removal from office by the same authority.

MANDAMUS. This was a motion for a *mandamus* directing the comptroller to issue his warrant, authorizing the treasurer to pay to the relators certain moneys drawn for by them, under the following state of facts : In 1836, an act was passed by the legislature of this state authorizing the establishment of a state lunatic asylum, *Statutes, sess. of* 1836, *p.* 110. By the fourth section of the act, it is made the duty of the *governor, secretary of state*, and *comptroller*, after a site shall be obtained for the location of the asylum, to appoint three commissioners to contract for the erection of the asylum, and to superintend the building thereof. To those commissioners the *treasurer* of the state is directed to pay, on the warrant of the comptroller, such sums as

shall be required for the building of the asylum, not exceeding a certain amount ; and a *per diem* allowance is made for the services and expenses of the commissioners *while actually employed* in the duties of their office. On the 7th day of July, 1837, the relators were duly appointed commissioners to contract for the erection of the asylum, and to superintend the building thereof, and took upon themselves the discharge of the duties of their appointment. On the first day of May, 1839, a further act was passed in reference to the asylum, *Statutes, sess. of* 1839, *p.* 286, directing the payment of further sums of money to the commissioners appointed to contract for and superintend the building of the asylum. On the twenty-second day of May, 1839, the *relators* were *removed from office* by the governor, secretary of state, and comptroller. On the same day, the relators made a draft upon the *treasurer* of the state for the sum of $5,000 for the purposes of the building, and caused the same to be presented to the *comptroller* for his warrant, which being refused, the present motion was made for a mandamus.

*W. Hunt,* in behalf of the relators, insisted that the relators were still commissioners, notwithstanding the act of the governor, secretary of state, and comptroller, under which it was claimed that their powers as commissioners had ceased. He contended, that their powers could be put an end to only by the *legislature.* That they were not *officers* within the meaning of the 16th § of the 4th art. of the constitution, which provides, that where the duration of any office is not prescribed by the constitution, it may be declared by law ; and if not so declared, such office shall be held during the pleasure of the *authority* making the appointment. This provision relates to *officers,* whereas the relators hold only an *employment* as contradistinguished from an *office,* which has been defined to be an employment on behalf of the government, in any station or public trust not merely *transient occasional* or *incidental.* 20 *Johns R.* 493. Directors of the Bank of England, though appointed by the crown, are not deemed public officers. 2 *Atk.* 405. If, however, the relators should

The People *v.* Comptroller of the State.

be deemed to hold an *office,* they can be *removed from office* only by the legislature. The officers of the government designated by the act of 1836 to make the appointment, are not *an authority* within the meaning of the constitution, during whose pleasure the office is to continue. They do not constitute a body or board, having power as such to make appointments. In this particular instance, it was a special delegated authority, and having exercised it, the power is spent. Nothing can be claimed for them by implication, and consequently the power of removal not being conferred, it did not exist. The counsel also submitted, that if the relators were to be deemed as holding an *office,* that the term or duration of their office was prescribed by the law under which they had received their appointment. They were appointed to contract for the erection of the asylum, and to superintend the building thereof. Having planned the building, contracted for its construction, and being intimately acquainted with the details in reference thereto, there is a fitness and propriety in their continuance in the employment until the completion of the undertaking ; and such should be presumed to have been the intention of the legislature in authorizing their appointment.

*J. C. Spencer,* (in place of the attorney general, who was indisposed,) opposed the motion.

*By the Court,* NELSON, Ch. J. If the commissioners are to be regarded as holding *an office* within the constitutional meaning of the term, there can be no reasonable doubt of the existence of the competent power to remove them. The 16th § of the 4th article of the constitution provides, that " where the *duration* of any *office* is not prescribed by the constitution, it may be declared by law ; and *if not so declared, such office shall be held during the pleasure of the authority making the appointment.*" The duration of office here obviously refers to the *period of time* the incumbent shall hold, that being the proper measure of it. This period had been previously prescribed in the constitution in

respect to many of the offices ; and the scope of the section is to provide for the case of officers whose term of office is left at large, as well those that might be created by statute, as those to be found in the constitution. That the provision applies to the former, is apparent from the 15th § of the same article of the constitution, which provides for the election or appointment of all officers thereafter to be created by law, who it is but reasonable to conclude were, among others, intended to be referred to, and regulated by the succeeding section, as they come fairly both within its reason and general terms.

Assuming, then, that the commissioners are to be regarded as holding *an office*, which I am inclined to think they should be, within the intent of the legislature, being recognized as such twice in the statute, § 5 and 9, it is clear, according to the above exposition, as there is no fixed period of time during which they are to hold, they are removable at the pleasure of the appointing power ; and as that power is vested in the governor, secretary of state, and comptroller, for the time being, they are removable by them.

But even if we were to reject the idea that the commissioners hold an *office*, the result must necessarily be the same. In such case, they are individual *agents* employed on behalf of the government, whose rights, like other ordinary employees, must depend upon the *contract*, express or implied, under which the service is performed. If no time is fixed therein, either of the contracting parties may terminate it at will ; the commissioners cannot claim to extend the time beyond the agreement of their employers. This is too obvious to require argument. It is conceded that no time is prescribed in the terms of appointment, or in the provisions of the statute under which it was made; but it has been argued that both indicate an engagement for the superintendence of the entire job—the event of finishing the work is said to be the limit of the contract, subject to the control of the legislature. I cannot think so. The statute prescribes the duties of the commissioners *while acting as such;* they are to devise a plan of the building, subject to the approval of the governor ;

The People *v.* Comptroller of the State.

contract for and superintend the erection of the same ; draw the necessary funds from the comptroller, pay the workmen, &c.; for all which they receive three dollars per day for the time actually engaged. The *tenure* by which they were to perform the service was not in the minds of the legislature, nor is there any thing in the act bearing at all on the subject, further than simply to provide for their employment. It must depend, there-fore, as before said, in the aspect we are now viewing the case upon the *contract*, and in *that* we perceive nothing binding upon either party to continue the service beyond the consent of each. Certainly, the commissioners were under no obligation to go on with the work, and might have surrendered the trust at any mo-ment, in despite of their employers, having engaged for no defi-nite time, or even until the work should be finished ; and the contract must be regarded as mutual. Besides, putting the case upon *contract*, and not on the footing of *office*, even were we to consider it for any reason as extending to the completion of the work, it is not perceived how a specific performance could be enforced ; if broken, the remedy, as in most cases of a breach of personal contract, must be sought for in damages. There are but few exceptions, and those the subject of chancery jurisdic-tion.

It is urged that the power of the governor, &c. is exhausted in the appointment already made. This I cannot admit. The object and purpose for which it was conferred require its continu-ance, otherwise the whole enterprise may fail in case of vacancy by death, resignation, &c. Indeed, not only the continued exist-ence of the power, but the right to exercise it by removal and new appointment, at the pleasure of the donees, seem indispen-sable, as well to insure the execution of the work, as the service of competent and faithful agents for the purpose. If the gov-ernor, &c. cannot fill *vacancies*, or displace incompetent *agents*, if such should happen to be appointed, no other body can, short of the legislature. The necessity of the power is apparent, and it seems to me that it clearly exists.

Believing, therefore, that the relators have been lawfully

removed, it follows that we cannot compel the comptroller to place the funds claimed in their hands.

The above conclusion makes it unimportant to notice other questions raised on the argument.

Motion denied.