THE STATE OF OHIO EX REL. JOHN H. PETTENGER *v.* JAMES T. CLAYPOOL.

A receiver of the assets of an insolvent bank, appointed pursuant to the provisions of the 41st section of the act of February 24, 1845, "To incorporate the state bank of Ohio, and other banking companies," (1 S. & C. Stat. 131), can not, under existing laws, be removed from his office, at the pleasure of the state officers by whom he is appointed.

QUO WARRANTO.

The relation shows that the Seneca county. bank, an independent banking company, organized under the act of February 24, 1845, having committed an act of insolvency by refusing to make specie payments, the defendant was, on the 20th day of July, 1858, duly appointed receiver thereof, by the auditor, treasurer and secretary of state, pursuant to the ·provisions of the 41st section of said act; that he gave bond to the satisfaction of said officers of state, took the oath of office, and continued in said receivership till the 18th day of October, 1861, when he was, by the action and direction of said state officers, " for causes by them adjudged sufficient, removed from his said office of receiver;" that, on the day last aforesaid, the vacancy thus created by the removal of the defendant was filled, by the same state officers, by the ·appointment of the relator, who duly gave bond, took the

State ex rel. Pettenger *v.* Claypool.

oath of office, etc., and thereupon demanded of the said Claypool possession of the books, records and assets of the Seneca county bank remaining in his hands, which the said Claypool refuses to surrender, and still claims to exercise the rights and perform the duties of said receivership.

The object of this proceeding is to oust the said Claypool from the said office of receiver.

The defendant, by his answer, claims that he is still entitled to hold said office, and perform its duties, notwithstanding the pretended act of removal, and denies the power of the auditor, secretary and treasurer of state to remove him from said office; and the single question arising in the case, is as to the existence of this power.

*James Murray*, attorney-general, for the relator:

By the law, the secretary, treasurer and auditor of state are constituted a " board of bank commissioners ;" and, as such, are authorized, by the 41st section of the act of February 24, 1845, " to incorporate the state bank of Ohio and other banking companies," in certain cases, to ascertain whether a banking company " has suspended the payment of its circulating notes, when lawfully demanded, in gold and silver coin;" and, if satisfied that it has so suspended, it is made their duty forthwith to appoint a " receiver or receivers," and to require of him or them bond, etc.

No power is, by the express language of this act, given to the board to remove the receiver thus appointed, or to fill a vacancy in the receivership, arising from any cause whatever.

We claim that, in this case, the power " to appoint a receiver," *includes in it, and carries with it,* as well the power, upon good cause shown, to *remove* the person so appointed, as to fill vacancies.

The receiver is appointed by the board; he has no fees for services performed; no fixed salary or compensation for labor done; *no tenure of office;* all these are at the pleasure of the board who appointed him.

If it be true that those who appoint have no power to remove, none to fill vacancies, then it follows that a receiver,

as soon as he is appointed and qualified, *is beyond control.* He may act or refuse to act; may act fraudulently or wrongfully; may so act or refuse to act as to irretrievably damage the interests of the state, the bank, its stockholders, billholders, and creditors. Suit may be brought upon the bond, but no change can be made in the receiver. Even if the bond should prove insufficient, the board can not require a new bond, and then remove a receiver if it is not given. Unless the power "*to remove*" is included in the power to "appoint," there is no method by which one of these receivers can be ousted of his place for any cause whatever. The court will not give any such construction to the law, unless *no other* construction can be given to it. The power to *remove* and to *fill vacancies* has been so often held to be included in and carried with a power to appoint, where the law made no provision therefor, that it would seem almost unnecessary to cite authorities or adduce arguments in its favor.

The president of the United States is authorized to appoint members of his cabinet, etc., by and with the advice and consent of the senate. It has ever been held that he had power to remove those members, etc., and to appoint others in their place, without even consulting the senate in reference thereto. 3 Story's Com. on the Constitution, 388, *et seq.*, 1 Kent's Com. 309, *et seq.*

This is going even farther than we claim the law will authorize, as we claim that the appointing power alone can remove the person appointed.

That the power to appoint, includes the power of removal at pleasure, by the appointing power, unless it is otherwise expressly provided in the law itself, is held in the following cases : *Commonwealth ex rel. Reynolds* v. *Bussier,* 5 S. & R. Rep. 460 ; *People* v. *Fitch,* 1 Calif. Rep. 525 ; *Graham* v. *Campbell,* 2 *Ib.* 136 ; *People* v. *Walker,* 23 Barb. Rep. 306 ; *People* v. *Comptroller,* 20 Wend. 598.

Where the *tenure of the office is not prescribed,* but the appointment is vested in a certain officer or board of officers, the only correct construction which can be given to the act

is, that the person appointed is to hold his office during the *pleasure* of the officer, or board appointing.

If not, who is to determine when the officer has finished the performance of his duties? Is he simply to cease to act, when he supposes he is through? It is claimed, however, that the power vested in this board to make an appointment, when once exercised, *is exhausted.* He admits that the power to appoint when once exercised, is exhausted, *until the person previously appointed is removed*—thus far but no farther is it exhausted; so that it brings us back to the real question in the case—the one which lies at the foundation of all other questions, and that is, the tenure of this office not being prescribed by law, is the appointment, one which continues simply during the pleasure of the appointing power; if so, then, the power appointing may, for good cause shown, remove the person appointed, and having removed him, may *then* appoint another to fill the vacancy.

We ask the attention of your honors to the remarks of the court, in the case of the *People, etc.* v. *Comptroller*, 20 Wend. 599, cited *supra.*

It seems to me that the power to appoint a receiver, as given by the law applicable to this case, no tenure of office being fixed, was and is simply an appointment to last during the pleasure of the board; and that this power includes in it and carries with it, the power to remove the person thus appointed, for good cause shown, and when removed, to fill the vacancy thus created, by appointment of another person to the place.

We, therefore, ask judgment of ouster.

*L. J. Critchfield,* for defendant:

The treasurer, secretary and auditor of state derive their power in regard to receivers of insolvent banks, from the provisions of section 41 of the bank act (1 S. & C. Stat. 131). That section authorizes the three officers named to *appoint* a receiver of a bank which has suspended specie payment. By reference to the provisions of that section of the statute it will be seen that so far as the express language is con-

cerned, the receiver appointed is, in the discharge of his duties, wholly independent of the officers who appoint him—is not made answerable to them in any manner—is not required to report to them—is not subject to their direction or control—is not their servant or *subordinate* in any respect—does not act *for them.*

This power to appoint a receiver is not within the scope of the general powers of the officers named, but is granted by special statute. When such limited power is vested in that manner and *exercised*, the persons in whom it was vested, and who exercised it, are *functus officio. Exparte Randolph*, 2 Brock. Rep. 473.

When a *vacancy exists* in the office of receiver, the treasurer, secretary and auditor can undoubtedly fill that vacancy. ᴛo do so, is simply to *appoint* a receiver, which they are authorized to do. But they can not *remove* a receiver—*make a vacancy*—for that they are not authorized to do.

It is said that the statute provides *no fixed salary or compensation* for the receiver, and *no tenure of office.* I am unable to perceive that these circumstances have any bearing upon the question of power to remove.

As to the salary or compensation, the presumption is that the receiver is to have a reasonable compensation for the labor he performs in discharging the duties the law imposes upon him.

As to the tenure of office, the presumption is that the receiver is to continue in his office such reasonable time as may be necessary to discharge its duties.

I controvert the proposition that an officer can be removed by the appointing power, simply because the tenure and pay of his office is not specified.

It does not follow, because the receiver can not be removed as well as appointed by the same officers, that he is beyond control. The legislature can furnish a remedy—can confer removing as well as appointing power.

The power to appoint does not include or imply the power to remove. I am unable to find a single adjudication to that effect.

In the *People* v. *Comptroller*, 20 Wend. 598, it. was held that the case came within the provision of the constitution of the State of New York, that " where the duration of any office is not prescribed by the constitution, it may be declared by law ; and if not declared, such office shall be held *during the pleasure of the authority making the appointment.*"

The president of the United States may remove as well as appoint his cabinet officers. But the case is not in point. Such officers are appointed by the president to *help him* discharge *his duties.* They are *his subordinates*, and he is re ponsible for the manner in which executive duties are performed by them. But a receiver of an insolvent bank under the 41st section of the bank act, is not appointed by the auditor, secretary and treasurer of state, to assist them or either of them to discharge their duties. He is no agent or servant of theirs ; but has an independent footing of his own, under the law, and discharges his own duties under his own bond and oath.

Had the legislature intended to vest the removing as well as appointing power in these state officers, such power would have been expressly conferred.

Scott, J.—The provisions of the statute, bearing upon this question, are all to be found in the 41st section of the act of February 24, 1845, " to incorporate the state bank of Ohio, and are as follows :

" On receiving notice that any such independent banking company shall have committed an act of insolvency, as hereinbefore defined, the treasurer of state, the secretary of state, and the auditor of state, or a majority of them, shall appoint a special agent, who shall immediately proceed to ascertain whether such company has refused to pay its notes in gold and silver coin, when lawfully demanded, and report to the said treasurer, secretary and auditor, the fact so ascertained ; and if from the report so made, the said treasurer, secretary and auditor, or a majority of them, shall be satisfied that such company has suspended the payment of its circulating notes, when lawfully demanded, in gold and silver

coin, they shall forthwith appoint a receiver or receivers, and require of him or them such bond and security as they shall deem proper, who shall proceed to take possession of the books, records and assets of every description of such company; collect all debts, dues, and other claims belonging to such company; settle, and with the approbation of an agent, to be appointed by the stockholders for the protection of their interests, compound for all bad and doubtful debts; sell all the real and personal property of said company, and pay over all moneys so made to the treasurer of state."

The power of removal claimed for the state officers named in this section, is certainly not conferred expressly by its terms; and we find nothing in its language, nor in the objects contemplated by it, from which the intention to grant such power can be inferred. The only duties enjoined upon these officers collectively, after ascertaining that a bank has committed an act of insolvency, are the appointment of a receiver, the fixing of the amount of his bond, and determining upon the sufficiency of his securities. The duties of the receiver, when appointed and qualified, do not depend, in the least degree, upon any discretion to be exercised by the officers who appoint him; but are all prescribed by law, and embrace all acts necessary to be done in the full settlement of the affairs of the insolvent bank. He is required to make no report to, nor settlement with, the officers in their collective capacity, by whom he was appointed—but is required merely to pay over all moneys which may come into his hands from sales or collections, etc., to the treasurer of state; and neither the auditor, nor secretary of state, have anything to do in the disposition of the moneys thus paid over.

For any failure on the part of the receiver to discharge his several duties with fidelity and due diligence, both he and his sureties are liable on his bond. His duties are his own, imposed directly upon him by the statute, in virtue of his office, and not as the agent or subordinate of the power by whom he was appointed, but to whom he is not made accountable. We know of no case in which it has ever been held that, under such circumstances, the power of removal is in-

cidental to the mere power of appointment, and may be exercised at the pleasure of the appointing party. The power of the president of the United States to remove a cabinet officer, referred to in argument, is not analogous to the present case. He is, by the constitution, invested with the executive power of the government. The members of his cabinet are his assistants in the discharge of the duties, which the constitution devolves primarily upon him, and for the due performance of which he is responsible to the country.

Nor do we think the case of *The People* v. *The Comptroller* (20 Wend. 598), to which we have been referred, is in point. The office in question, in that case, was one which the court regarded as belonging to a class for which the constitution of the state expressly provided, that they should "be held during the pleasure of the authority making the appointment."

For any injury which may result to public or private interests from the present state of the law upon this subject, the remedy must be sought in the proper quarter.

Information dismissed, and judgment for defendant.

SUTLIFF, C. J., and PECK, GHOLSON and BRINKERHOFF, JJ., concurred.